**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARLA LYNN SWANSON, | CASE NO. CV F 09-1507 LJO DLB |
|         Plaintiff, | **ORDER ON DEFENDANTS' F.R.Civ.P. 12 MOTION TO DISMISS** |
|   vs. | (Doc. 17.) |
| EMC MORTGAGE CORPORATION, et al., | |
|         Defendants. / | |

## INTRODUCTION

Defendants EMC Mortgage Corporation ("EMC") and Mortgage Electronic Registration Systems, Inc. ("MERS") seek to dismiss as meritless and insufficiently plead plaintiff Marla Lynn Swanson's ("Ms. Swanson's") claims arising from a loan, default and mortgage on Ms. Swanson's Sanger residence ("property"). Ms. Swanson filed no papers to oppose dismissal of her claims against EMC and MERS. This Court considered EMC and MERS' F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the November 10, 2009 hearing, pursuant to Local Rule 78-230(h). For the reasons discussed below, this Court DISMISSES this action against EMC and MERS.

## BACKGROUND

### Ms. Swanson's Loan And Default

Ms. Swanson obtained a $308,000 loan from defendant Community Lending, Inc. ("Community Lending") and which was secured by a deed of trust ("DOT") encumbering the property and recorded

on July 14, 2006.[1]  The DOT identifies Ms. Swanson as borrower, Community Lending as lender, Stewart Title of California as Trustee, and MERS as beneficiary.

Defendant Robert E. Weiss, Inc. ("Weiss") was substituted as DOT trustee by a substitution of trustee recorded on February 24, 2009.

A Notice of Default and Election to Sell under Deed of Trust was recorded on February 24, 2009 and indicates that Ms. Swanson was $9,804.68 in arrears on her loan as of February 23, 2009.

A second Notice of Default and Election to Sell under Deed of Trust was recorded on March 5, 2009 and indicates that Ms. Swanson was $11,984.68 in arrears on her loan as of March 4, 2009.

## Ms. Swanson's Claims

On August 25, 2009, Ms. Swanson filed her complaint ("complaint") to allege federal and California statutory and common law claims.[2]  The complaint appears to challenge EMC and/or MERS' standing to initiate non-judicial foreclosure of the property.  The complaint alleges on information and belief "that no legal transfer of the Mortgage Note, Deed of Trust or any other interest in Plaintiff's Property was effected that gave any of the Defendants the right to be named a trustee, mortgagee, beneficiary or an authorized agent of trustee, mortgagee or beneficiary of Plaintiff's Mortgage Note, Deed of Trust or any other interest in Plaintiff's Property."  The complaint further alleges that "Defendants . . . are not the real parties in interest because they are not the legal trustee, mortgagee or beneficiary, nor are they authorized agents of the trustee, mortgagee or beneficiary, nor are they in possession of the Note, or holders of the Note, or non-holders of the Note entitled to payment . . . . Therefore, Defendants instituted foreclosure proceedings against Plaintiff's Property without rights under the law."

The complaint alleges six claims against EMS and/or MERS which this Court will address below and seeks an injunction against foreclosure, general, statutory and punitive damages, and attorney fees.

///

---

[1] All documents pertaining to Ms. Swanson's loan and default were recorded with the Fresno County Recorder.

[2] The complaint pursues claims against Ms. Swanson's mortgage brokers.  Such claims are not subject to EMC and MERS' motion to dismiss.

2

# DISCUSSION

## F.R.Civ.P. 12(b)(6) Standards

EMC and MERS attack the claims against them as meritless, barred by law and lacking supporting facts. EMC and MERS characterize the allegations against them as "conclusory and boilerplate."

"A trial court may dismiss a claim sua sponte under Fed.R.Civ.P. 12(b)(6). . . . Such dismissal may be made without notice where the claimant cannot possibly win relief." *Omar v. Sea-Land Service, Inc.*, 813 F.2d 986, 991 (9th Cir. 1987); *see Wong v. Bell*, 642 F.2d 359, 361-362 (9th Cir. 1981). Sua sponte dismissal may be made before process is served on defendants. *Neitzke v. Williams*, 490 U.S. 319, 324 (1989) (dismissals under 28 U.S.C. § 1915(d) are often made sua sponte); *Franklin v. Murphy*, 745 F.2d 1221, 1226 (9th Cir. 1984) (court may dismiss frivolous in forma pauperis action sua sponte prior to service of process on defendants).

A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In resolving a F.R.Civ.P. 12(b)(6) motion, the court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 765, 767 (8th Cir. 2003) (citation omitted). A court need not permit an attempt to amend a complaint if "it determines

that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.
>
> . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  (Citation omitted.)

For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). Nonetheless, a court may consider exhibits submitted with the complaint. *Van Winkle*, 290 F.Supp.2d at 1162, n. 2. In addition, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003). Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are

based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[3]  A "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)).  Moreover, "judicial notice may be taken of a fact to show that a complaint does not state a cause of action." *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956); *see Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997).  A court properly may take judicial notice of matters of public record outside the pleadings'" and consider them for purposes of the motion to dismiss. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (citation omitted).  As such, this Court may consider plaintiffs' pertinent loan and foreclosure documents.

**Rosenthal Fair Debt Collections Practices Act**

The complaint's second claim attempts to allege EMC's violation of California's Rosenthal Fair Debtor Collection Practices Act ("RFDCPA"), Cal. Civ. Code, §§ 1788, et seq.  The claim alleges that "Defendants are debt collectors within the meaning of the Rosenthal Act in that they regularly, in the course of their business, on behalf of themselves or others, engage in the collection of debt."

EMC and MERS challenge the claim in that the complaint "does not properly allege that EMC is a debt collector within the meaning of the RFDCPA."

The RFDCPA's purpose is "to prohibit debt collectors from engaging in unfair or deceptive practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts."  Cal. Civ. Code, § 1788.1(b).  The RFDCPA defines "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection."  Cal. Civ. Code, § 1788.2(c).

EMC and MERS argue that the RFDCPA does not prevent a creditor to enforce its security interest under a deed of trust because foreclosing on property does not support a claim under the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq.  EMC and MERS note that

---

[3] "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

5

as a loan servicer, EMC is an authorized agent of the DOT beneficiary to enforce the beneficiary's security interest under the DOT.

EMC and MERS further fault the RFDCPA claim's failure to allege facts to support EMC's RFDCPA violation in that the claim conclusively alleges that "Defendants" "threatened to take actions not permitted by law, including . . . collecting on a debt not owed to the Defendants, making false reports to credit reporting agencies, foreclosing upon a void security interest, foreclosing upon a Note of which they were not in possession nor otherwise entitled to payment, falsely stating the amount of a debt, increasing the amount of a debt by including amounts that are not permitted by law or contract, and using unfair and unconscionable means in an attempt to collect a debt."

EMC and MERS cite to no conclusive authority that non-judicial foreclosure is not debt collection under the RFDCPA. However, "foreclosing on the property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA." *Hulse v. Ocwen Federal Bank, FSB*, 195 F.Supp.2d 1188, 1204 (D. Or. 2002). As the fellow district court in *Hulse*, 195 F.Supp.2d at 1204, explained:

> Foreclosing on a trust deed is distinct from the collection of the obligation to pay money. The FDCPA is intended to curtail objectionable acts occurring in the process of collecting funds from a debtor. But, foreclosing on a trust deed is an entirely different path. Payment of funds is not the object of the foreclosure action. Rather, the lender is foreclosing its interest in the property.
>
> . . . Foreclosure by the trustee is not the enforcement of the obligation because it is not an attempt to collect funds from the debtor.

Logic suggests that non-judicial foreclosure is not a debt collector's act under California Civil Code section 1788.2(c). Like the FDCPA, the RFDCPA seeks to prohibit debt collection abuses. A foreclosure action does not address payment of funds. The complaint is void of facts that EMC sought to enforce Ms. Swanson's obligation by collecting funds from her. The RFDCPA claim's recitation of alleged wrongs fails to substantiate RFDCPA wrongdoing to warrant the claim's dismissal against EMC and MERS.

### **Negligence**

The complaint's (third) negligence claim alleges that EMC and MERS "owed a duty to Plaintiff to perform acts in such a manner as to not cause Plaintiff harm." The claim alleges "Defendants

breached their duty of care to the Plaintiff when they failed to maintain the original Mortgage Note, failed to properly create original documents, failed to make the required disclosures to the Plaintiff and instituted foreclosure proceedings wrongfully." The claim further alleges that EMC and MERS "breached their duty of care to the Plaintiff when they took payments to which they were not entitled, charged fees they were not entitled to charge, and made or otherwise authorized negative reporting of Plaintiff's creditworthiness to various credit bureaus wrongfully."

EMC and MERS characterize the claim's duty "theory" as a "common law duty of care." EMC and MERS fault the claim's "conclusory allegations" lacking details as to how EMC and MERS breached such a duty. EMC and MERS note their absence of a lender-borrower relationship with Ms. Swanson and an independent duty "to perform acts in such a manner as to not cause Plaintiff harm."

"The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury." *Mendoza v. City of Los Angeles*, 66 Cal.App.4th 1333, 1339, 78 Cal.Rptr.2d 525 (1998) (citation omitted). "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence." *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d 1089, 1095, 283 Cal.Rptr. 53 (1991). "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." *Vasquez v. Residential Investments, Inc.*, 118 Cal.App.4th 269, 278, 12 Cal.Rptr.3d 846 (2004) (citation omitted).

"The 'legal duty' of care may be of two general types: (a) the duty of a person to use ordinary care in activities from which harm might reasonably be anticipated [, or] (b) [a]n affirmative duty where the person occupies a particular relationship to others. . . . In the first situation, he is not liable unless he is actively careless; in the second, he may be liable for failure to act affirmatively to prevent harm." *McGettigan v. Bay Area Rapid Transit Dist.*, 57 Cal.App.4th 1011, 1016-1017, 67 Cal.Rptr.2d 516 (1997).

EMC and MERS correctly note the absence of an actionable duty between a lender and borrower in that loan transactions are arms-length and do not invoke fiduciary duties. Absent "special circumstances" a loan transaction "is at arms-length and there is no fiduciary relationship between the borrower and lender." *Oaks Management Corp. v. Superior Court*, 145 Cal.App.4th 453, 466, 51

Cal.Rptr.3d 561 (2006); *see Downey v. Humphreys,* 102 Cal.App.2d 323, 332, 227 Cal.Rptr. 484 (1951) ("A debt is not a trust and there is not a fiduciary relation between debtor and creditor as such.") Moreover, a lender "owes no duty of care to the [borrowers] in approving their loan. Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'" *Wagner v. Benson*, 101 Cal.App.3d 27, 35, 161 Cal.Rptr. 516 (1980) (citing several cases). "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark*, 231 Cal.App.3d at 1096, 283 Cal.Rptr. 53.

"Public policy does not impose upon the Bank absolute liability for the hardships which may befall the [borrower] it finances." *Wagner*, 101 Cal.App.3d at 34, 161 Cal.Rptr. 516. The success of a borrower's investment "is not a benefit of the loan agreement which the Bank is under a duty to protect." *Wagner*, 101 Cal.App.3d at 34, 161 Cal.Rptr. 516 (lender lacked duty to disclose "any information it may have had").

The complaint alleges no facts of EMC and MERS' cognizable duty to Ms. Swanson to support a negligence claim. "No such duty exists" for a lender "to determine the borrower's ability to repay the loan. . . . The lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's." *Renteria v. United States*, 452 F.Supp.2d 910, 922-923 (D. Ariz. 2006) (borrowers "had to rely on their own judgment and risk assessment to determine whether or not to accept the loan"). Ms. Swanson's purported claims arise from her failure to pay her loan and subsequent initiation of foreclosure of the property. The complaint further lacks facts of special circumstances to impose duties on EMC and MERS in that the complaint depicts an arms-length home loan transaction, nothing more. The complaint fails to substantiate a special lending relationship with EMC and MERS or an actionable breach of duty to warrant dismissal of the negligence claim.

### Real Estate Settlement Procedures Act

The complaint alleges that on June 10, 2009, a Qualified Written Request ("QWR") under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, et seq., was mailed to EMC and included a demand to rescind the loan under the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, et

seq. The complaint further alleges that "EMC has yet to properly respond to this Request." The complaint's fourth claim alleges that "EMC violated RESPA, 12 U.S.C. § 2605(e)(5),[4] by failing and refusing to provide a proper written explanation or response to Plaintiff's QWR."

### *No Private Right Of Action For Disclosure Violations*

EMC and MERS argue that to the extent the RESPA claim seeks to recover for disclosure violations, the claim is a barred in the absence of a private right of action.

RESPA's purpose is to "curb abusive settlement practices in the real estate industry. Such amorphous goals, however, do not translate into a legislative intent to create a private right of action." *Bloom v. Martin*, 865 F.Supp. 1377, 1385 (N.D. Cal. 1994), *aff'd*, 77 F.3d 318 (1996). "The structure of RESPA's various statutory provisions indicates that Congress did not intend to create a private right of action for disclosure violations under 12 U.S.C. § 2603 . . . Congress did not intend to provide a private remedy . . ." *Bloom*, 865 F.Supp. at 1384.

---

[4] 12 U.S.C. § 2605(e)(2) addresses response to a QWR and provides:

Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall–

(A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

EMC and MERS correctly point out the absence of a private right of action for RESPA disclosure violations to doom the RESPA claim to the extent it is based on disclosure violations.

### *Absence Of Pecuniary Loss*

EMC and MERS further fault the RESPA claim's failure to allege pecuniary loss.

"Whoever fails to comply with this section shall be liable to the borrower . . . [for] any actual damages to the borrower as a result of the failure . . ." 12 U.S.C. § 2605(f)(1)(A). "However, alleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiffs must, at a minimum, also allege that the breach resulted in actual damages." *Hutchinson v. Delaware Sav. Bank FSB*, 410 F.Supp.2d 374, 383 (D. N.J. 2006).

The RESPA claim fails to allege pecuniary loss from EMC's alleged failure to respond to Ms. Swanson's QWR. Such omission is fatal to the claim given its mere reliance on a RESPA violation without more.

### **Fraud**

The complaint's (sixth) fraud claim alleges that "EMC misrepresented to Plaintiff that EMC has the right to collect monies from Plaintiff on its behalf or on behalf of others when Defendant EMC had no legal right to collect such monies." The claim further alleges that "MERS misrepresented to Plaintiff on the Deed of Trust that it is a qualified beneficiary with the ability to assign or transfer the Deed of Trust and/or the Note and/or substitute trustees under the Deed of Trust. Further, Defendant MERS misrepresented that it followed the applicable legal requirements to transfer the Note and Deed of Trust to subsequent beneficiaries."

### *Absence Of Particularity*

EMC and MERS challenge the fraud claim's failure to satisfy F.R.Civ.P. 9(b) requirements to allege fraud with particularity.

The elements of a California fraud claim are: (1) misrepresentation (false representation, concealment or nondisclosure); (2) knowledge of the falsity (or "scienter"); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court*, 12 Cal.4th 631, 638, 49 Cal.Rptr.2d 377 (1996). The same elements comprise a cause of action for negligent misrepresentation, except there is no requirement of intent to induce reliance. *Caldo v. Owens-Illinois,*

*Inc.*, 125 Cal.App.4th 513, 519, 23 Cal.Rtpr.3d 1 (2004).

"[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and specifically, all of the elements of the cause of action. *Conrad v. Bank of America*, 45 Cal.App.4th 133, 156, 53 Cal.Rptr.2d 336 (1996). There must be a showing "that the defendant thereby intended to induce the plaintiff to act to his detriment in reliance upon the false representation" and "that the plaintiff actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment." *Conrad*, 45 Cal.App.4th at 157, 53 Cal.Rptr.2d 336.

F.R.Civ.P. 9(b) requires a party to "state with particularity the circumstances constituting fraud."[5] In the Ninth Circuit, "claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements." *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003). A court may dismiss a claim grounded in fraud when its allegations fail to satisfy F.R.Civ.P. 9(b)'s heightened pleading requirements. *Vess*, 317 F.3d at 1107. A motion to dismiss a claim "grounded in fraud" under F.R.Civ.P. 9(b) for failure to plead with particularity is the "functional equivalent" of a F.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim. *Vess*, 317 F.3d at 1107. As a counter-balance, F.R.Civ.P. 8(a)(2) requires from a pleading "a short and plain statement of the claim showing that the pleader is entitled to relief."

F.R.Civ.P. 9(b)'s heightened pleading standard "is not an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance of unnecessary discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996). F.R.Cvi.P. 9(b) requires "specific" allegations of fraud "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-672 (9th Cir.

---

[5] F.R.Civ.P. 9(b)'s particularity requirement applies to state law causes of action: "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1995)(italics in original)).

11

1993) (internal quotations omitted; citing *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th Cir. 1997)). The Ninth Circuit Court of Appeals has explained:

> Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud. The time, place and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have consistently required that circumstances indicating falseness be set forth. . . . [W]e [have] observed that plaintiff must include statements regarding the time, place, and *nature* of the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." . . . The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. . . .
>
> In certain cases, to be sure, the requisite particularity might be supplied with great simplicity.

*In Re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) (italics in original) *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297 (C.D. Cal. 1996); *see Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged); *Neubronner*, 6 F.3d at 672 ("The complaint must specify facts as the times, dates, places, benefits received and other details of the alleged fraudulent activity.")

As to multiple fraud defendants, a plaintiff "must provide each and every defendant with enough information to enable them 'to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with.'" *Pegasus Holdings v. Veterinary Centers of America, Inc.*, 38 F.Supp.2d 1158, 1163 (C.D. Ca. 1998) (quoting *In re Worlds of Wonder Sec. Litig.*, 694 F.Supp. 1427, 1433 (N.D. Ca. 1988)). "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F.Supp. 1437, 1439 (M.D. Fla. 1998)). "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[] in the alleged fraudulent scheme." *Swartz*, 476 F.3d at 765 (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989)).

Moreover, in a fraud action against a corporation, a plaintiff must "allege the names of the

persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.* 2 Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861 (1991).

The complaint is severely lacking and fails to satisfy F.R.Civ.P. 9(b) "who, what, when, where and how" requirements as to EMC, MERS and the other defendants. The complaint makes no effort to allege names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written. The complaint fails to substantiate the circumstances alleging falseness attributable to EMC or MERS. The complaint lacks facts to support each fraud element. The fraud claim's deficiencies are so severe to suggest no potential improvement from an attempt to amend.

### *MERS California License*

The fraud claim disputes that MERS is a qualified DOT beneficiary. Ms. Swanson appears to base such notion on grounds that MERS is not qualified to conduct business in California. The complaint alleges that "MERS was not registered to do business in California."

MERS contends that "its activities pursuant to the DOT are not considered instrastate business that will require it to be licensed in California." MERS points to California Corporations Code section 191(c)(7) which provides that a "foreign corporation shall not be considered to be transacting instrastate business" by "[c]reating evidences of debt or mortgage, liens or security interests on real or personal property." California Corporations Code section 191(d)(3) exempts from doing "business in the state" the "enforcement of any loans by trustee's sale." Moreover, a foreign corporation does not transact instrastate business by "defending any action or suit."

MERS demonstrates that it was qualified to conduct California business to defeat a fraud claim to the effect MERS was not.

### *DOT Beneficiary Authority*

The fraud claim disputes that MERS has authority to pursue non-judicial foreclosure. MERS notes that the DOT names MERS as a beneficiary to defeat the complaint's attempt to allege that MERS lacks a right to foreclose.

"Financing or refinancing of real property is generally accomplished in California through a deed

of trust. The borrower (trustor) executes a promissory note and deed of trust, thereby transferring an interest in the property to the lender (beneficiary) as security for repayment of the loan." *Bartold v. Glendale Federal Bank,* 81 Cal.App.4th 816, 821, 97 Cal.Rptr.2d 226 (2000). A deed of trust "entitles the lender to reach some asset of the debtor if the note is not paid." *Alliance Mortgage Co. v. Rothwell,* 10 Cal.4th 1226, 1235, 44 Cal.Rptr.2d 352 (1995). If a borrower defaults on a loan and the deed of trust contains a power of sale clause, the lender may non-judicially foreclose. *See McDonald v. Smoke Creek Live Stock Co.*, 209 Cal. 231, 236-237, 286 P. 693 (1930).

Under California Civil Code section 2924(a)(1), a "trustee, mortgagee or beneficiary or any of their authorized agents" may conduct the foreclosure process. Under California Civil Code section 2924b(4), a "person authorized to record the notice of default or the notice of sale" includes "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee." "Upon default by the trustor, the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale." *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777.

"If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly." *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 440, 129 Cal.Rptr.2d 436 (2003). The California Court of Appeal has explained non-judicial foreclosure under California Civil Code sections 2924-2924l:

> The comprehensive statutory framework established to govern nonjudicial foreclosure sales is intended to be exhaustive. . . . It includes a myriad of rules relating to notice and right to cure. It would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision into statutory nonjudicial foreclosure proceedings.

*Moeller v. Lien,* 25 Cal.App.4th 822, 834, 30 Cal.Rptr.2d 777 (1994).

MERS correctly notes that as DOT beneficiary, MERS is empowered to commence foreclosure proceedings, including causing the trustee to execute a notice of default to start foreclosure. The DOT contains a power of sale to authorize non-judicial foreclosure. MERS demonstrates that it is a qualified DOT beneficiary to defeat a fraud claim to the effect it is not.

In short, the fraud claim's severe deficiencies warrant its dismissal without leave to amend.

**Unfair Business Practices**

The complaint's seventh claim alleges EMC and MERS' acts "constitute unlawful, unfair, and/or fraudulent business practices, as defined in California Business and Professions Code § 17200 et seq. (Unfair Competition Law ['UCL'])."

*Standing*

EMC and MERS contend that Ms. Swanson lacks standing to pursue a UCL claim.

California Business and Professions Code section 17204 limits standing to bring a UCL claim to specified public officials and a private person "who has suffered injury in fact and has lost money or property as a result of the unfair competition."

Business and Professions Code section 17203 addresses UCL relief and provides in pertinent part:

> Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments . . . as may be necessary to restore to any person in interest any **money or property**, real or personal, which may have been acquired by means of such unfair competition. (Bold added.)

EMC and MERS correctly note the complaint's absence of facts of Ms. Swanson's money or property allegedly lost due to a UCL violation. The UCL claim offers an insufficient, bare allegation that "Plaintiff has suffered various damages and injuries according to proof at trial." The complaint lacks sufficient allegations of Ms. Swanson's standing to warrant dismissal of the UCL claim.

*Unfair, Fraudulent Or Deceptive Business Practices*

EMC and MERS take issue with the complaint's attempt to allege an illegal business practice under the UCL.

The UCL prohibits "unlawful" practices "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal.App.4th 832, 838, 33 Cal.Rptr.2d 548 (1999). According to the California Supreme Court, the UCL "borrows" violations of other laws and treats them as unlawful practices independently actionable under the UCL. *Farmers Ins. Exchange v. Superior Court,* 2 Cal.4th 377, 383, 6 Cal.Rptr.2d 487 (1992).

"Unfair" under the UCL "means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as

a violation of the law, or otherwise significantly threatens or harms competition." *Cal-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 187, 83 Cal.Rptr.2d 548 (1999).

The "fraudulent" prong under the UCL requires a plaintiff to "show deception to some members of the public, or harm to the public interest," *Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F.Supp.2d 1099, 1121 (C.D. Ca. 2001), or to allege that "members of the public are likely to be deceived." *Medical Instrument*, 2005 WL 1926673, at *5.

"The California Supreme Court has held that 'something more than a single transaction,' either on-going wrongful business conduct or a pattern of wrongful business conduct, must be alleged in order to state a cause of action under the Unfair Business Practices Act." *Newman v. Checkrite California*, 912 F.Supp. 1354, 1375 (E.D. Ca. 1995). "The use of the phrase 'business practice' in section 17200 indicates that the statute is directed at ongoing wrongful conduct." *Hewlett v. Squaw Valley Ski Corp.*, 54 Cal.App.4th 499, 519, 63 Cal.Rptr.2d 118 (1997). "[T]he 'practice' requirement envisions something more than a single transaction . . .; it contemplates a 'pattern of conduct' [citation], 'on-going . . . conduct' [citation], 'a pattern of behavior' [citation], or 'a course of conduct.' . . ." *State of California ex rel. Van de Kamp v. Texaco, Inc.*, 46 Cal.3d 1147, 1169-1170, 252 Cal.Rptr. 221 (1988).

"A plaintiff alleging unfair business practices under these statutes [UCL] must state with reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of California, Inc.*, 14 Cal.App.4th 612, 619, 17 Cal.Rptr.2d 708 (1993).

EMC and MERS are correct that the complaint is "insufficient to establish that Defendants engaged in any 'unfair' business practices within the meaning of section 17200." The complaint lacks reasonable particularity of facts to support an UCL claim. The claim's bare mention of "unlawful, unfair and/or fraudulent business practices" provides not the slightest inference that Ms. Swanson has a viable UCL claim. The complaint points to no predicate violation of law. Similar to the fraud claim, the UCL claim lacks particularity of fraudulent circumstances, such as a misrepresentation, for a UCL claim. The complaint lacks allegations of ongoing wrongful business conduct or a pattern of such conduct. The UCL claim lacks facts to hint at a wrong subject to the UCL to warrant the claim's dismissal.

### Wrongful Foreclosure

The complaint's tenth claim appears to fault EMC and MERS for failure "to suspend the

foreclosure action to allow the Plaintiff to be considered for alternative foreclosure prevention options." The wrongful foreclosure claim references absence of "possession of the Note," failure "to properly record and give proper notice of the Notice of Default," and "failure to comply with the statutory requirements [to deny] Plaintiff the opportunity to exercise her statutory rights."

EMC and MERS criticize the wrongful foreclosure claim as premature in that the property has not been foreclosed upon. EMC and MERS point to the absence of recording a trustee's deed upon sale.

EMC and MERS are correct that in the absence of a foreclosure sale, they cannot be liable for "wrongful foreclosure." Moreover, "a trustee or mortgagee may be liable to the trustor or mortgagor for damages sustained where there has been an illegal, fraudulent or wilfully oppressive sale of property under a power of sale contained in a mortgage or deed of trust." *Munger v. Moore*, 11 Cal.App.3d 1,7, 89 Cal.Rptr. 323 (1970). The complaint lacks facts of EMC and/or MERS' alleged illegal or fraudulent activity to impose tort liability based on their conduct in connection with foreclosure of the property.

The wrongful foreclosure claim gives rise to no cognizable claim. It fails with Ms. Swanson' other claims. Ms. Swanson's attempt to manufacture a claim based on "possession of the Note" fails.

"Under Civil Code section 2924, no party needs to physically possess the promissory note." *Sicairos v. NDEX West, LLC*, 2009 WL 385855, *3 (S.D. Cal. 2009) (citing Cal. Civ. Code, § 2924(a)(1)). Rather, "[t]he foreclosure process is commenced by the recording of a notice of default and election to sell by the trustee." *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777. An "allegation that the trustee did not have the original note or had not received it is insufficient to render the foreclosure proceeding invalid." *Neal v. Juarez*, 2007 WL 2140640, *8 (S.D. Cal. 2007).

The wrongful foreclosure claim is illogical to warrant its dismissal.

### Attempt At Amendment And Malice

Ms. Swanson's claims against EMC and MERS are insufficiently pled and barred as a matter of law. Ms. Swanson is unable to cure her claims by allegation of other facts and thus is not granted an attempt to amend.

Moreover, this Court is concerned that Ms. Swanson has brought this action in absence of good faith and that Ms. Swanson exploits the court system solely for delay or to vex EMC and MERS. The test for maliciousness is a subjective one and requires the court to "determine the . . . good faith of the

applicant." *Kinney v. Plymouth Rock Squab Co.*, 236 U.S. 43, 46 (1915); *see Wright v. Newsome*, 795 F.2d 964, 968, n. 1 (11th Cir. 1986); *cf. Glick v. Gutbrod*, 782 F.2d 754, 757 (7th Cir. 1986) (court has inherent power to dismiss case demonstrating "clear pattern of abuse of judicial process"). A lack of good faith or malice also can be inferred from a complaint containing untrue material allegations of fact or false statements made with intent to deceive the court. *See Horsey v. Asher*, 741 F.2d 209, 212 (8th Cir. 1984). An attempt to vex or delay provides further grounds to dismiss this action against EMC and MERS.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. DISMISSES with prejudice this action against EMS and MERS; and
2. DIRECTS the clerk to enter judgment against plaintiff Marla Lynn Swanson and in favor of defendants EMC Mortgage Corporation and Mortgage Electronic Registration Systems, Inc. in that there is no just reason to delay to enter such judgment given that Ms. Swanson's claims against defendants EMC Mortgage Corporation and Mortgage Electronic Registration Systems, Inc. are clear and distinct from claims against the other defendants. *See* F.R.Civ.P. 54(b).

IT IS SO ORDERED.

Dated:   October 29, 2009          /s/ Lawrence J. O'Neill
                                    UNITED STATES DISTRICT JUDGE